UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PRIME HOOKAH INC.,** a New Jersey corporation,<br><br>Plaintiff,<br><br>v.<br><br>**FCM ONLINE LLC**, a New Jersey Corporation, **MAHMUT KURT** an individual, **JOHN YAVUZ,** an individual, **JMR ONLINE LLC**, a New Jersey Corporation, **ABC Company** and **DOES 1-10,**<br><br>Defendants. | Civ. No. 2:21-cv-13915 (WJM)<br><br>OPINION |

In this action for state and federal trademark infringement, Plaintiff Prime Hookah ("Plaintiff" or "Prime") moves without opposition for entry of judgment by default against Defendants FCM Online LLC ("FCM"), Mahmut Kurt ("Kurt"), John Yavuz ("Yavuz"), and JMR Online LLC ("JMR") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 15. The Court decides this motion without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Plaintiff's motion for default judgment is **granted.**

## I. BACKGROUND

Plaintiff is a New Jersey corporation that owns the registered trademarks for Zebra Smoke, Registration Number 5274449 ("Zebra") and Tanya Herbal, Registration Number 5701504 ("Tanya"). *See* Amended Compl., ¶ 2, Exs. A and B. It advertises and sells Zebra, Tanya, and other hookah[1] related charcoal products nationally through its own website and through a network of authorized distributors, wholesalers, and retailers. *Id.* at ¶ 16.

---

[1] A hookah is "single- or multi-stemmed instrument for heating or vaporizing and then smoking either tobacco, flavored tobacco [], or sometimes cannabis, hashish, and opium." https://en.wikipedia.org/wiki/Hookah

1

Defendant Kurt operates and is the registered agent for FCM. *Id.* at ¶ 4. Yavuz operates and is the registered agent for JMR. *Id.* at ¶ 6. JMR and FCM are New Jersey corporations that have "storefronts" on Amazon.com ("Amazon"). *Id.* at ¶¶ 3, 5, 10. JMR, Yavuz, and FCM are partners sharing merchandise and profits. *Id.* Defendants are not authorized to sell Zebra or Tanya trademarks on Amazon or by any other means but have at least five[2] product listings on Amazon advertising Zebra and Tanya products (coal burners, candy tips, starter pro kits, mouth tips, and smoke hoses) and displaying their logos. *Id.* at ¶¶ 49-53. FCM advertised and sold non-Zebra and Tanya products under Zebra and Tanya trademarks to residents of New Jersey and various other states. *Id.* at ¶¶ 36, 56, 60. Although Plaintiff purports to have sent cease and desist letters,[3] all the listings were still posted on Amazon[4] at the time of Plaintiff's filing of the Complaint. *Id.* at ¶¶ 43, 59.

Plaintiff filed suit against Defendants on July 20, 2021. ECF No. 1. Plaintiff filed an Amended Complaint on August 18, 2021 adding Defendants Yavuz and JMR. ECF No. 5. The eight-count Amended Complaint presents claims for trademark infringement and use of a counterfeit mark in violation of 15 U.S.C. § 1114 (Count I); false advertising in violation of 15 U.S.C. § 1125(a)(1)(b) (Count II); false designation of origin and unfair competition (passing off) in violation of 15 U.S.C. § 1125(a) (Counts III and IV); trademark infringement in violation of New Jersey common law (Count V); and unfair competition (passing off, misappropriation, and unprivileged imitation of another's product) in violation of New Jersey common law (Counts VI, VII, and VIII). Plaintiff seeks statutory damages and a permanent injunction prohibiting Defendants from selling products containing the Zebra Smoke or Tanya trademarks.[5]

Defendants have not answered or otherwise moved as to Plaintiff's Amended Complaint. Plaintiff served FCM with a summons on September 22, 2021. ECF No. 9. The Clerk of Court entered default as to FCM on October 15, 2021. Yavuz and JMR were served on October 12, 2021, and Kurt on October 14, 2021. ECF No. 13. An entry of

---

[2] Plaintiff claims that Defendants have at least seven product listings, but only five are identified in the pleading. *See* Amended Compl., ¶¶ 38, 49-53.

[3] Exhibits D and E of the Amended Complaint purportedly evidence the cease-and-desist letters, but Exhibit D is a USPS tracking notification and Exhibit E contains an April 11 FCM email to Plaintiff's counsel stating that it does not sell Zebra items and a July 6, 2021 email of an order for hookah mouth tips.

[4] As of the date of this Opinion, the smoke hoses have been taken down from Amazon. The remaining products advertised as Zebra or Tanya brand remain for sale on Amazon, but Defendants do not appear to be the sellers.

[5] In its brief, Plaintiff also requests statutory damages pursuant to 15 U.S.C.A. § 1117(d), which provides for not less than $1,000 and up to $100,000 per domain name that violates section 43(d) of the Lanham Act. However, the Amended Complaint contains no allegations of an infringing domain name.

default was entered as to JMR, Yavuz, and Kurt on November 9, 2021. Plaintiff notified Defendants of the present motion for default judgment on February 7, 2022. ECF No. 16.

## II. DISCUSSION

Fed. R. Civ. P. 55(b)(2) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). However, because the entry of default judgment prevents a decision on the merits, the mere fact of default does not entitle a plaintiff to judgment. Rather, "[i]t is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). An entry of default judgment requires that the Court first determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law." *Chanel, Inc. v. Gordashevsky*, 558 F.Supp.2d 532, 535 (D.N.J. 2008). After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181.

    A.    <u>Whether Cause of Action is Stated</u>

As discussed below, Plaintiff's factual allegations are sufficient to establish a cause of action for trademark infringement, counterfeiting, and unfair competition in violation of federal and state law.

        *1.*    *Federal Claims (Counts I through IV)*

To prevail on trademark infringement and counterfeiting,[6] false designation of origin, and unfair competition[7] claims, a plaintiff must establish that: (1) their marks are

---

[6] Any person who, without consent of the trademark holder, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" is liable for trademark infringement. 15 U.S.C. § 1114(1)(a).

3

valid and legally protectable; (2) they own the marks; and (3) defendants' use of their marks to identify goods or services is likely to create confusion concerning the origin of the goods or services. *See Checkpoint Sys., Inc. v. Check Point Software Tech., Inc.*, 269 F.3d 270, 279–80 (3d Cir. 2001) (setting forth elements of trademark infringement and unfair competition); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472–73 (3d Cir.1994) (observing that factors relevant to unfair competition and false designation claims under 15 U.S.C. § 1125 are "essentially the same" as those relevant to trademark infringement claim under 15 U.S.C. § 1114); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (trademark infringement and false designation claims analyzed under identical standards) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)). Because Defendants have defaulted, the Court accepts as true Plaintiff's allegations that Defendants had five listings on Amazon using Plaintiff's validly owned Zebra and Tanya marks and finds that such use likely caused customer confusion as to the origin of the goods.

A claim for false advertising[8] requires Plaintiff to establish: "(1) that the defendant has made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014). The Court accepts as true that Defendants sold in interstate commerce goods that they falsely advertised as Zebra or Tanya products. Such false advertising is likely to have deceived and influenced consumers to purchase Defendants' inferior counterfeit products resulting in loss of sales to Plaintiff and damage to its reputation and the value of the trademarks.

In sum, Plaintiff sufficiently asserts valid causes of action in Counts I through IV for trademark infringement, counterfeiting, false designation of origin, unfair competition, and false advertising in violation of the Lanham Act.

---

[7] 15 U.S.C. § 1125(a)(1)(A) makes liable "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

[8] The Lanham Act § 43(a)(1)(B) prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B); see also Parks, LLC v. Tyson Foods, Inc., 863 F.3d 220, 226 (3d Cir. 2017).

2. *State Law Claims*

Counts V, VI, VII, and VIII are New Jersey state law claims for trademark infringement and unfair competition under New Jersey common law. Since causes of action under the Lanham Act for trademark infringement and unfair competition have already been shown, the Court finds that Plaintiff has also stated viable trademark infringement and unfair competition claims in violation of New Jersey common law. *See J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law . . .."); *see also SK & F, Co. v. Premo Pharm. Lab'ys, Inc.*, 625 F.2d 1055, 1065 (3d Cir. 1980) (perceiving "no essential difference" between elements of New Jersey tort of unprivileged imitation and "acts proscribed by section 43(a) of the Lanham Act except for the Lanham Act's required element of interstate commerce.")

B. Claims Against Individual Defendants

A corporate officer who knowingly participates in trademark infringement "can be held personally liable, jointly and severally, with the corporate defendant." *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978). "For example, a 'central figure' in a corporation may be held personally liable for acts of unfair competition that he 'authorized and approved.'" *Prime Hookah, Inc. v. M.K. Distributors Inc.*, No. 20-10231, 2020 WL 3977381, at *7 (D. Mass. July 14, 2020) (citing *Donsco*, 587 F.2d at 606). Here, apart from references to Defendants collectively throughout the pleading, Plaintiff asserts that Kurt and Yavuz are registered agents, that they "operate[d] and direct[ed] the company," Amended Compl., ¶ 4, 6, 91, 105, 126, as well as "share[d] merchandise and profits," benefitted from infringing conduct, and "purchased other products" from Plaintiff to conceal any wrongdoing, *id.* at ¶¶ 10, 45. These allegations are sufficient to hold Kurt and Yavuz personally liable for violations of the Lanham Act.

C. Whether The Entry Of Default Judgment Would Be Proper

Defendants have no meritorious defense based on the limited record before the Court. *See e.g., Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11–624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (no meritorious defense where court could not determine existence of meritorious defense since defendant did not respond). Moreover, Plaintiff has clearly been prejudiced by Defendants' failure to answer as it remains unable to move forward with the case, and has been delayed in receiving the requested relief, including an injunction to prevent further infringement. *See e.g., E.A.*

*Sween Co. v. Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 575 (D.N.J. 2014) (holding plaintiff would suffer prejudice from denial of default judgment where defendant failed to appear or defend itself in nearly seven months since proper service). Finally, where, as here, a defendant has failed to respond, there is a presumption of culpability. *See Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *4.

    D.    <u>Damages</u>

        *1.*    *Permanent Injunction*

The Lanham Act vests courts with the power to provide permanent injunctive relief. *See* 15 U.S.C. § 1116(a); *Piquante Brands Intern., Ltd. v. Chloe Foods Corp.*, 2009 WL 1687484, at *6 (D.N.J. June 16, 2009) ("Under the Lanham Act, an injunction is a 'usual and standard remedy.'" (citing 5 J. Thomas McCarthy, Trademarks & Unfair Competition § 30:1 (4th ed. 2006)). A permanent injunction requires Plaintiff to demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay Inc., v. MercExchange LLC*, 547 U.S. 388, 391 (2006).

Plaintiff has met its burden. First, Plaintiff would suffer irreparable injury if Defendants were permitted to continue using the Zebra and Tanya marks because Plaintiff relies on maintaining the quality and reputation of its trademarked goods. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (noting that "loss of control of reputation, loss of trade, and loss of good will" are grounds for irreparable injury) (citing *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir.1998)); 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction . . ."). Second, harm to its trademarks cannot be remedied solely through monetary relief. Lastly, the balance of equities weighs in favor of injunctive relief because the conduct to be enjoined clearly violates the Lanham Act and serves no legitimate purpose. *See, e.g., E.A. Sween Co., Inc., LLC*, 19 F. Supp. 3d at 576–78 (granting permanent injunction enjoining defendants from infringing on plaintiffs' trademarks when defendant's only hardship was to stop unlawful conduct and public interest was served to have "a truthful and accurate marketplace"); *Chanel, Inc.*, 133 F. Supp. 3d at 689–90 (granting permanent injunction on default judgment of trademark infringement claims when defendant's use of plaintiff's marks created consumer confusion and it furthered public interest to protect registered trademarks). Accordingly, Plaintiff is entitled to injunctive relief.

2.  *Damages*

The Lanham Act permits a plaintiff to elect to recover an award of statutory damages instead of actual damages and profits. *See* 15 U.S.C. § 1117(c). A plaintiff challenging the use of a counterfeit mark may elect to recover statutory damages between $1,000 and $200,000 per mark, but if the use of a counterfeit mark was "willful," then the court may award up to $2,000,000 per mark per type of goods sold, offered for sale, or distributed, as the court considers just. 15 U.S.C. § 1117(c)(2); *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 687 (D.N.J. 2015). Thus, Plaintiff seeks the statutory maximum damages of $2,000,000 for willful misconduct against each Defendant[9] for each of the five types of goods that infringe on the two protected trademarks. In total, Plaintiff requests $1,200,000,000. *See* Pl.'s Mot. for Default at 19. However, a finding of willfulness requires that the defendant acted with an "'aura of indifference to plaintiff's rights' or a 'deliberate and unnecessary duplicating of a plaintiff's mark ... in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured.'" *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir.1999), *superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 171 (3d Cir. 2005); *see e.g., Green Pet Shop Enterprises, LLC v. Telebrands Corp.*, No. 17-6179, 2018 WL 547544, at *2 (D.N.J. Jan. 24, 2018) (finding receipt of detailed cease-and-desist letter, followed by continued infringement, makes inference of willfulness plausible). Here, despite Plaintiff's claims that Defendants continued to infringe even after its cease-and-desist letters, there is no evidence to support that allegation.[10] *See* n. 3, 4, *supra*.

Absent clear guidelines for setting a statutory damage award, "courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants.'" *Matos*, 133 F. Supp. 3d at 687 (citing *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010)). However, statutory damages

---

[9] Any judgment for statutory damages against Defendants will be joint and several. *See Microsoft Corp. v. Silberstein*, No. 06-3206, 2009 WL 10690512, at *11 (D.N.J. Jan. 29, 2009); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 588 (E.D. Pa. 2002), *amended* (June 28, 2002); *G6 Hosp. Franchising LLC v. HI Hotel Grp., LLC*, No. 11-02176, 2016 WL 1109211, at *1 (M.D. Pa. Mar. 22, 2016).

[10] Even if Defendants' infringement was willful, Plaintiff's request for a total of $1.2 billion breaks down to $120 million per mark per type of good. By the Court's calculation, the total statutory maximum damages available for willful infringement is $20 million ($2 million for each of the two counterfeit marks for each of the five types of goods sold). Plaintiff, through no fault of its own, provides no estimate of lost sales, but also has offered no information on its expenses, profits, or revenues as a point of reference or to justify such an excessive award that is 60 times the statutory maximum for willful infringement. *See Louis Vuitton Malletier, S.A. v. Mosseri*, No. 07–2620, 2009 WL 3633882 at *2 (D.N.J. Oct. 28, 2009) (noting factors to consider in determining statutory damage award such expenses saved, profits reaped, lost revenues, value of trademark, deterrent effect on others, innocence or willfulness of defendant's conduct, defendant's cooperation in providing records to assess value of infringing material produced, and potential for discouraging defendant).

"serve as a substitute for actual damages" and therefore, "should bear some discernible relation to the actual damages suffered." *Id.* The Court need not conduct a hearing "when statutory damages are involved because the very purpose of statutory damages is to provide the plaintiff with relief when damages are not assessable due to the defendant's conduct." *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-02662, 2009 WL 2147843, at *6 (D.N.J. July 15, 2009). To determine an appropriate award, courts may also look to what awards have been given in recent cases in the district. *See Ocean Point Gifts*, 2010 WL 2521444, at *6. In Lanham Act cases, "two factors overwhelmingly motivated statutory damage awards: the point of sale of the infringing goods and the monetary value of the item counterfeited." *Matos*, 133 F. Supp. 3d at 688 (awarding $30,000 per infringement in "prototypical internet case" where internet sale of luxury counterfeit items goods rather than in localized storefront enabled counterfeited goods to be widely disseminated); *see Ocean Point Gifts*, 2010 WL 2521444, at *8 (awarding $10,000 per infringement where counterfeit products were not widely distributed on internet but were counterfeit luxury items in contrast to counterfeit cigarettes that receive "dramatically lower damage awards"); *Philip Morris USA, Inc. v. Jaritza Supermarket, Inc.*, No. 09-2372, 2009 WL 4496047, at *2 (D.N.J. Nov. 9, 2009) (awarding $4,000 total for counterfeit cigarettes sold in local retail store).

Plaintiff has not demonstrated how profitable its products are; the only financial information known to the Court is that the infringing products are fairly inexpensively priced from $10.99 to $25.99, clearly closer in value to cigarettes than to luxury items. Amended Compl., ¶¶ 49-53; *see Hayward Industries, Inc. v. Saltwater Pool Supplies*, No. 20-6105, 2021 WL 1940711, at *13 (D.N.J. May 14, 2021). Balancing the monetary value and the wider dissemination of the counterfeited goods on the internet, the Court finds that the appropriate statutory damage award in this case is $3,000 per counterfeit mark per type of goods sold for a total of $30,000.

For the foregoing reasons, Plaintiff's motion for entry of default judgment is **granted**. Judgment shall be entered against Defendants, jointly and severally, for statutory damages in the amount of $30,000. Additionally, Defendants are permanently enjoined from any use of the Zebra or Tanya marks. An appropriate order and judgment follows.

WILLIAM J. MARTINI, U.S.D.J.

**Date: April ___, 2022**

8